1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              CENTRAL DISTRICT OF CALIFORNIA

10   MONTSERRAT LOPEZ, an individual,        Case No. 2:21-cv-00447-MCS-PVS
11   on behalf of herself, and on behalf of all
     persons similarly situated,            **ORDER DENYING MOTION TO**
12                                          **REMAND [13]**
13                   Plaintiff,
14          v.
15
16   ADIDAS AMERICA, INC., an Oregon
     Corporation, and DOES 1 through 50,
17   Inclusive,
18                   Defendants.
19

20          Plaintiff Montserrat Lopez moves to remand this case, arguing that Defendant

21   Adidas America Inc. has not demonstrated a $5,000,000 amount in controversy under

22   the Class Action Fairness Act of 2005 ("CAFA"). Mot. to Remand, ECF No. 13. Adidas

23   filed an Opposition and Lopez filed a Reply. Opp., ECF No. 16; Reply, ECF No. 18.

24   The Court deems this matter appropriate for decision without oral argument and vacates

25   the hearing. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The Motion is **DENIED**.

26   **I.      BACKGROUND**

27          Adidas removed Lopez's complaint under 28 U.S.C. § 1332(d) of CAFA. *See*

28   Not. of Removal, ECF No. 1; *see also* Compl., ECF No. 1-4. Lopez, an hourly, non-

exempt employee, brings the following claims on behalf of herself and a putative class of all "Defendants' current and former non-exempt California employees (the 'California Class') at any time during the period beginning four (4) years prior to the filing of [the] Complaint and ending on the date as determined by this Court (the 'Class Period')": **(1)** unfair competition in violation of Business and Professions Code §§ 17200, *et seq.*; **(2)** failure to pay overtime in violation of Labor Code §§ 510, *et seq.*; **(3)** failure to pay minimum wages in violation of Labor Code §§ 1194, 1197, and 1197.1; **(4)** failure to provide required meal periods in violation of Labor Code §§ 226.7 and 512 and the applicable Wage Order; **(5)** failure to provide required rest periods in violation of Labor Code §§ 226.7 and 513 and the applicable Wage Order; **(6)** failure to provide accurate itemized wage statements in violation of Labor Code § 226; **(7)** failure to pay wages when due in violation of Labor Code §§ 201-203; **(8)** violation of Labor Code § 1198 and California Code of Regulation, Title 8, Section 1 1070(14) (failure to provide seating). *See generally* Compl.

## II.   LEGAL STANDARD

CAFA "vests the district court with 'original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which' the parties satisfy, among other requirements, minimal diversity.'" *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 680 (9th Cir. 2006) (quoting 28 U.S.C § 1332(d)). "[T]he defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Where, as here, a plaintiff presents a facial challenge to removal, a defendant may rely on plausible allegations of jurisdictional elements and need not necessarily present summary-judgment type evidence. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964–65 (9th Cir. 2020); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) ("An assumption may be reasonable if it is founded on the allegations of the complaint.").

## III. REQUEST FOR JUDICIAL NOTICE

Adidas seeks judicial notice of an order from the Northern District of California and Lopez's counsel's declaration supporting a motion for attorneys' fees filed in state court. *See* Request for Judicial Notice ("RJN") Exs. A-B, ECF No. 17. Lopez objects to the RJN on grounds of hearsay and lack of foundation. *See* Pl.'s Obj. to RJN, ECF No. 19. The Court overrules those objections and takes judicial notice of Adidas's documents, but not reasonably disputed facts in them. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases."); *Cousyn for Cousyn Grading and Demo Inc. v. Ford Motor Company*, 2019 WL 3491930, at *4 (C.D. Cal. July 30, 2019) ("[E]ven when the court judicially notices the existence of a reliable source, it may not notice disputed facts contained within the source.") (citation omitted).

## IV. DISCUSSION

Adidas estimates an amount in controversy of at least $12,977,964. The Court turns to Adidas's estimate for each claim.

### A. Waiting Time Penalties ($4,591,836 Estimate)

California law provides that "[i]f an employer willfully fails to pay… any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(b). Lopez alleges that Adidas did not pay employees premium wages, "had uniform policies and practices" to illegally retain wages, and that all class members are still owed these wages. Compl. ¶¶ 9, 69, 83. Each class member demands "up to thirty days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment" and "demands an accounting and payment of all wages due, plus interest and statutory costs." *Id.* ¶ 103.

Based on the Complaint's broad allegations inferring that every non-exempt terminated employee could have suffered at least one violation, assuming the maximum

violation rate is reasonable. *Moppin v. Los Robles Reg'l Med. Ctr.*, 2015 WL 5618872, at *4 (C.D. Cal. Sept. 24, 2015) ("Other courts have allowed 100% violation rate assumptions in similar situations where plaintiffs alleged a 'laundry list' of potential violations.") (collecting cases). Adidas analyzes employment data and estimates that 2,440 non-exempt employees separated from Adidas during the class period. Kristen Lasorsa Decl. ¶ 7; Supp. Lasorsa Decl., ECF No. 16-1. Conservatively assuming a 4.5-hour day for the 30-day statutory maximum,  and because the average hourly rate was $13.94, Adidas estimates $4,591,836 in waiting time penalties is in controversy (i.e. 2,440 employees x 4.5 hours/day x $13.94/hour x 30 days). Opp. 21-22.

Lopez challenges these assumptions, arguing that Adidas must affirmatively cite substantial evidence in response to Lopez's facial challenge, stressing the allegation that employees experienced violations "from time to time." Reply 1, 5. But Adidas can make reasonable assumptions based on the Complaint and need not come forth with the kind of summary-judgment evidence that Lopez suggests to support CAFA jurisdiction. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1227-28 (9th Cir. 2019) (holding that a defendant seeking to remove under CAFA should not have been required to present evidence in support of its jurisdictional allegations when the plaintiff asserted a facial challenge to the notice of removal). The unsupported averment that violations occurred "from time to time" does not cancel the Complaint's otherwise systemic class allegations, let alone does it warrant remand based on insufficient damages. *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) ("Plaintiff cannot simply sit silent and take refuge in the fact that it is Defendant's burden to establish the grounds for federal jurisdiction. This is especially the case since the knowledge in question… is uniquely within Plaintiff's possession.").

The Court thus determines that Adidas's assumptions and the resulting estimated amount in controversy for waiting time penalties are reasonable. *Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403 (C.D. Cal. May 9, 2018) (finding that maximum penalties was a reasonable assumption based on similar allegations).

**B. Wage Statement Penalties ($1,746,250 Estimate)**

Lopez alleges that "as a matter of company policy, practice and procedure," Adidas "intentionally, knowingly, and systematically" failed to issue class members "accurate itemized wage statements showing, among other things, the amount of time worked." Compl. ¶ 13. Adidas calculates the amount in controversy for Lopez's wage statement penalty claim based on the number of pay periods for each class member, assuming a 100% violation rate based on the allegation that Adidas violated section 226 in every pay period. Opp. 19. Adidas's calculation is reasonable because it is supported by sufficient (uncontroverted) evidence, the Complaint's allegations, and because Lopez does not persuasively challenge Adidas's methodology. *Bermejo v. Lab'y. Corp.*, 2020 WL 6392558, at *7 (C.D. Cal. Nov. 2, 2020) ("Similar to the waiting time penalties, given that Defendant can reasonably assume its alleged 'practices and policies' of underpaying wages translate to about one overtime, meal break, and rest break violation each per week, every wage statement (covering a two-week period) likely contained an alleged error.") (citing *Wheatley v. Masterbrand Cabinets, LLC et al.*, No. 18-CV-2127, 2019 WL 688209, at *7 (C.D. Cal. Feb. 19, 2019) ("Because Plaintiff's wage statement claim is 'derivative of [his] allegation that Defendant failed to pay him and the putative class members for all hours worked' [], Defendant may reasonably assume every wage statement contained at least one inaccuracy.")).

**C. Meal ($1,557,343 Estimate) and Rest ($1,912,989 Estimate) Periods**

Lopez alleges a "uniform policy and practice" of depriving employees of meal and rest periods, claiming "there were many days where [Lopez] did not even receive a partial lunch" and that class members couldn't take meal and rest breaks due to their "rigorous work schedules" and Adidas's "inadequate staffing practices." Compl. ¶¶ 8-9, 13, 14-16. Class members "forfeited meal breaks without additional compensation" under Adidas's "strict corporate policy and practice," "were denied proper rest periods," and "when rest period were provided," Adidas "unlawfully required" the class "to remain on the premises and on duty for those periods." *Id.* ¶¶ 15-16.

Based on these allegations, Adidas reasonably assumes a 40% violation rate for meal and rest periods. *Mejia v. DHL Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) ("It is not unreasonable to assume that when a company has unlawful policies and they are uniformly 'adopted and maintained,' then the company may potentially violate the law in each and every situation where those policies are applied."). Adidas analyzes employment data showing that roughly 61% of the 457,434 shifts were eligible for at least one meal period and that at least 75% were eligible for one rest period, resulting in 111,717 meal period violations and 137,230 rest period violations. *See* Supp. Lasorsa Decl. ¶ 6. Lopez again argues that these assumptions are unfounded because Adidas has not proven them with sufficient evidence. Reply 5-7. Yet Lopez offers no countervailing evidence, relying instead on uncorroborated contentions. *Id.* Again, Adidas has no obligation to support removal through extensive business records proving liability with respect to Lopez or the class. *Salter*, 974 F.3d at 963-65. Lopez's allegations concerning the pervasiveness and frequency of Adidas's violations allow Adidas to make reasonable assumptions. *Id.* In fact, given Lopez's comprehensive allegations, Adidas could likely assume a violation rate *above* its 40% estimate. *Alvarez v. Office Depot., Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (60% violation rate reasonable based on similar allegations); *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4–5 (C.D. Cal. Jan. 7, 2015) (50% violation rate reasonable); *Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *3 (C.D. Cal. Apr. 28, 2015) (100% violation rate reasonable).

Adidas's assumptions are therefore reasonable and its estimate for Lopez's meal and rest period claims is sound.

### D. Fees ($2,500,000 Estimate)

Lopez seeks attorneys' fees in connection with all the Complaint's claims. When fees are authorized by statute, they must be included in calculating the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("a court must include future attorneys' fees recoverable by statute or contract

when assessing whether the amount-in-controversy requirement is met"); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998) (fees included in amount in controversy, regardless of whether the fee award is mandatory or discretionary).

Adidas uses a 25% benchmark rate to calculate fees and multiplies aggregate damages to estimate an approximate $2,500,000 fee award. Opp. 22-23. Lopez does not dispute that fees should be included in the amount in controversy, but wrongly reiterates that Adidas cites no "summary-judgment type evidence" to support its 25% benchmark. Reply 9. But the Ninth Circuit has affirmed the reasonableness of a 25% rate. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To the extent Adidas must show the type of "proof" that Lopez demands, Adidas proffers a declaration in which Lopez's counsel sought recovery of fees above the 25% benchmark. *See* RJN Exs. A-B. While the Court is not bound by this evidence, it is nonetheless probative of Adidas's assumptions insofar as it shows that Lopez's counsel attested to the propriety of a fee percentage in excess of what Adidas suggests here. At any rate, the Ninth Circuit consistently affirms Adidas's 25% benchmark, and the Court determines that it is reasonable.

Because Lopez's waiting time, wage statement, meal period, rest period, and attorneys' fees claims support an amount in controversy well over $5,000,000, the Court need not consider Lopez's remaining claims.

## V.    CONCLUSION

Adidas has established an amount in controversy over $5,000,000 and that the Court has jurisdiction under CAFA. 28 U.S.C. § 1332(d). The Motion is thus **DENIED**.

Dated: March 11, 2021

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

7